IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ED BUTCHER, LONNY BERGSTROM, | CV 20–57–H–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| TIMOTHY FOX, in his official capacity as Attorney General of Montana, JEFFREY MANGAN, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

Before the Court is Plaintiffs Ed Butcher and Lonny Bergstom's Motion for Summary Judgment (Doc. 4), and Defendant, the State of Montana's, Motion for Summary Judgment (Doc. 11).  For the reasons explained, the State's motion is granted, and Plaintiffs' motion is denied.

## BACKGROUND

### I.    Factual Background

On March 9, 2020, at the invitation of the Dawson County Republican Central Committee, Plaintiffs State Senator Ed Butcher and Lonny Bergstrom traveled from Lewistown, Montana to Glendive, Montana to present a PowerPoint presentation about various republican candidates for the then-upcoming election.

1

(Doc. 5 at 17.)  Plaintiffs incurred approximately $450 in driving expenses, lodging, and food for the trip.  (Doc. 6 at 4.)  During the presentation, Plaintiffs called for audience members to vote for several local candidates seeking the Republican Party's nomination for seats in Montana's legislature.  (*Id.*)

On May 29, 2020, a campaign finance complaint was filed with the Montana Commissioner of Political Practices ("Commissioner") alleging that Plaintiffs violated Montana campaign disclosure laws for their presentation in Glendive. (Doc. 3-2 at 2.)  As a result of the complaint, the Commissioner asked Plaintiffs to respond to the issues raised.  (Doc. 12 at 12.)  Plaintiffs have not yet responded. (*Id.*)

Additionally, the Commissioner investigated other presentations Plaintiffs made in various communities across Montana.  (Doc. 12-2 at 2.)  Plaintiffs aver they "almost never include statements in their representations that could be construed as support for, or opposition to, candidates for elective office, but occasionally, such statements occur."  (Doc. 6 at 6.)  Plaintiffs also indicate that they "intend to engage in similar presentations during the remainder of the 2020 election cycle and beyond, but will not do so while there remains a threat of additional exposure to civil penalties . . . ."  (*Id.* at 6.)

Following the Commissioner's initiation of an investigation into Plaintiffs' previous presentations, Plaintiffs filed the instant action under 42 U.S.C. § 1983

for declaratory and injunctive relief.  Plaintiffs move for summary judgment on their First Amendment speaker-based discrimination claim, First Amendment vagueness claim, and Fourteenth Amendment equal protection claim.[1]  (Doc. 4.) The State filed a cross-motion for summary judgment.  (Doc. 11.)

In response to that motion, Plaintiffs attached the Commissioner's "Finding of Sufficient Facts to Support a Campaign Practice Act Violation."  (Doc. 19-1.) The document states that the Commissioner found a violation of Montana law and that a civil fine is justified and referred the matter to the County Attorney of Lewis and Clark County for his consideration of prosecution.  (*Id.*)

## II.    Legislative Background

Under Montana law, a political committee is:

A combination of two or more individuals or a person other than an individual who receives a contribution or makes an expenditure:

(i) to support or oppose a candidate or a committee organized to support or oppose a candidate or a petition for nomination;

(ii) to support or oppose a ballot issue or a committee organized to support or oppose a ballot issue; or

(iii) to prepare or disseminate an election communication, an electioneering communication, or an independent expenditure.

Mont. Code Ann. § 13-1-101(31)(a) (2019).

---

[1] Plaintiffs did not move for summary judgment on their remaining claims, counts IV and VI which allege a violation of separation of powers and infringement upon the constitutional authority of the Attorney General under Montana's Constitution.  (Doc. 1 at 16–19).  As this case involves purely legal issues, Plaintiffs failure to brief those claims will be construed as a waiver, *see Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999), and the Court will dismiss those claims without prejudice.

There are four types of political committees, including: ballot issue committees, incidental committees, independent committees, and political party committees. *Id.* § 13-1-101 (31)(b).  As relevant here, an "incidental committee" is a committee "that is not specifically organized or operating for the primary purpose of supporting or opposing candidates or ballot issues but that may incidentally become a political committee by receiving a contribution or making an expenditure." *Id.* § 13-1-101(23)(a).  However, "a political committee is not formed when a combination of two or more individuals or a person other than an individual makes . . . an independent expenditure of $250 or less." *Id.* § 13-1-101(31)(d).

An expenditure, in turn, is defined as "a purchase, payment, distribution, loan advance, promise, pledge, or gift of money or anything of value" that is "made by the candidate or political committee *to support or oppose a ballot issue.*" *Id.* § 13-1-101(18)(a)(i) (emphasis added).  However, an expenditure does not include "payments by a candidate for personal travel expenses, food, clothing, lodging, or personal necessities for the candidate and the candidate's family." Further, an act may be "de minimis," meaning it is "so small that it does not trigger . . . reporting." *Id.* § 13-1-101(11).  Election statutes delegate the Commissioner of Political Practices authority to adopt rules in order to carry out the provisions of

4

Chapter 37.  The rules are required to "define what constitutes de minimis acts,

contributions, and expenditures."  *Id.* § 13-1-114(2)(b).

The Montana Administrative Rules, in turn, contain additional guidance on

what qualifies as de minimis, and therefore not reportable:

> (a) whether the act, contribution, or expenditure has an ascertainable fair market value, and if so the amount of that value;
>
> (b) in the case of an act that results in the provision of services, whether the act results in either a detriment to the provider of the services, such as an out-of-pocket expense or the preclusion of other activities;
>
> (c) whether the act, contribution, or expenditure at issue is a single, one-time event or occurrence or multiple events or occurrences;
>
> (d) the extent to which a particular campaign practices violation deprives the public of disclosure;
>
> (e) other factors and circumstances similarly showing limited value or minimal harm.

Mont. Admin. R. 44.11.603(1)(a)–(e).

Further, the Rule specifically lists certain acts and expenditures that "may"

be de minimis.  The list includes "expenses associated with volunteer services or

efforts, including the cost of gas, parking, and meals."  *Id.* at (2)(g).

Finally, a candidate's personal expenses are excluded from the definition of

expenditure.  "An expenditure for personal use or expense occurs when, for

example, the expenditure . . . covers the cost of travel, lodging, food, and

registration, including g attendance at any conference or event, that *does not serve

a campaign interest.*"  Mont. Admin. R. 44.11.608(2)(c) (emphasis added).

5

Political committees must file periodic reports of contributions and expenditures made by the political committee. The Montana Administrative Rules further clarify that an incidental committee's reportable activity includes making one or more expenditures. Mont. Admin. R. 44.11.202(6)(a). Failure to report expenditures can result in civil liability and fines. Mont. Code Ann. § 13-37-124.

## LEGAL STANDARD

Summary judgment is appropriate if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Plaintiffs argue that Montana's political reporting and disclosure requirements unfairly discriminate against noncandidates; they assert that if they had been candidates, the $450 in travel expenses they incurred on their Glendive trip would have been statutorily exempted from the definition of an "expenditure." As it is, they face civil prosecution for failing to register as a political action committee and disclose their overnight expenses which they contend violates their First and Fourteenth Amendment rights. They also assert that Montana's de

minimis exception to the reporting requirement is unconstitutionally vague.  (Doc.
5 at 2.)

The State first asserts that because Plaintiffs have not yet been sanctioned by
the Commissioner, and because they contend their presentations "almost never"
endorse individual candidates, they have failed to establish pre-enforcement
standing to pursue their claims.  (Doc. 12 at 6.)  The State further asserts that
Plaintiffs' constitutional claims hinge entirely on their misunderstanding of the
law; the correct reading of the law, according to the State, requires both candidates
and committees to report travel expenses related to campaign activity.  (*Id.* at 7.)
Finally, the State defends Montana's definition of a de minimis expense against
Plaintiffs' vagueness challenge, asserting that Plaintiffs' legal arguments cite only
portions of the full definition.  (*Id.*)

## I.     Standing

The State argues that Plaintiffs failed to establish an injury in fact to confer
standing because they fail to allege a concrete and detailed plan to violate the law.
(Doc. 12 at 16–18.)  Plaintiffs contend the Commissioner's finding, issued three
weeks *after* the State's cross-motion for summary judgment was filed, constitutes a
threat to prosecute them and sufficiently proves they have suffered an actual or
imminent injury.  (Doc. 19 at 2.)  Plaintiffs further allege they have standing

because "the threat of additional penalties is keeping them from engaging in future speech." (*Id.* at 3.)

The burden rests on the plaintiff to establish three elements of standing: injury in fact, causation, and a likelihood that a favorable decision will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560–61 (1992); *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). The State does not place causation and redressability in dispute.

To satisfy the injury-in-fact element in a pre-enforcement case, courts "apply the principle that one need not await consummation of threatened injury before challenging a statute restricting speech, to guard the risk that protected conduct will be deterred." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (citing *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). A plaintiff "may meet the constitutional requirements by 'demonstrat[ing] realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Lopez*, 630 F.3d at 785 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A "realistic danger" must be established by "alleg[ing] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Id.*

8

Plaintiffs have established a "reasonable likelihood" that the government will enforce the challenged laws. *Id.* This Court has previously recognized that even an ongoing investigation into a potential election law violation likely constitutes a credible threat of prosecution. *Nat'l Ass'n for Gun Rights, Inc. v. Motl*, 188 F. Supp. 3d 1020, 1029 (D. Mont. 2016). Here, however, the Commissioner has done more than provide notice of an investigation; the Commissioner has also issued a "Finding of Sufficient Facts to Support a Campaign Practice Act Violation." (Doc. 19-1.) As a result, Plaintiffs now face a genuine threat of imminent prosecution from either the Lewis and Clark County Attorney or the Commissioner. (Doc. 19-1 at 20.) Contrary to the State's contention, it does not matter that this lawsuit does not challenge the Commissioner's findings. It is sufficient that Plaintiffs face an imminent legal threat, and this lawsuit, if successful, would bar any civil penalty. Plaintiffs have standing to pursue their claims.

## II.   First Amendment

### A. Montana's campaign disclosure law does not discriminate against noncandidates.

Plaintiffs argue that the challenged law places a speaker-based restriction on protected political speech because Montana laws require noncandidates to report travel expenses, whereas candidates are not required to report the same. (Doc. 5 at 9–12.) The State correctly asserts that Plaintiffs' argument hinges on a misreading

9

of the statute and a misunderstanding of what constitutes a "personal expense."

(Doc. 12 at 22.)

Montana's campaign disclosure laws do not treat candidates differently from noncandidates when it comes to the disclosure of personal expenses. Under Montana law, two types of expenses are excluded from any disclosure requirement: de minimis expenses and personal expenses. When it comes to noncandidates, Montana law requires disclosure of an expense in three circumstances:

> (i) to support or oppose a candidate or a committee organized to support or oppose a candidate or a petition for nomination;
>
> (ii) to support or oppose a ballot issue or a committee organized to support or oppose a ballot issue; or
>
> (iii) to prepare or disseminate an election communication, an electioneering communication, or an independent expenditure.

Mont. Code Ann. § 13-1-101(31)(a) (2019). These expenses must only be reported when they are in excess of $250. *Id.* § 13-1-101(31)(d). However, an expense incurred by a noncandidate is only construed as an expenditure to the extent it is "a purchase, payment, distribution, loan advance, promise, pledge, or gift of money or anything of value" that is "made by the candidate or political committee *to support or oppose a ballot issue.*" *Id.* § 13-1-101(18)(a)(i) (emphasis added).

Candidates are subject to the same disclosure requirements, Mont. Code Ann. § 13-37-225, except Montana law specifically clarifies that "payments by a

10

candidate for personal travel expenses, food, clothing, lodging, or personal
necessities for the candidate and the candidate's family" need not be reported, *id.*
§ 13-1-101(18)(b)(ii).  By administrative rule, a candidate's personal expenses are
excluded from the definition of expenditure.  Mont. Admin. R. 44.11.608(2)(c)
("An expenditure for personal use or expense occurs when, for example, the
expenditure . . . covers the cost of travel, lodging, food, and registration, including
attendance at any conference or event, that *does not serve a campaign interest.*"
(emphasis added)).  This is because candidates are precluded from using campaign
funds to pay for personal travel.  *See* Mont. Admin. R. 44.11.608(2)(c).

In sum, by its plain language, both candidates and noncandidates are
required to report travel expenses when such expenses are incurred to support or
oppose a candidate.  Mont. Code Ann. § 13-1-101(18)(a).  The exemption for
candidate's personal travel expenses contained in § 13-1-101(18)(b)(ii) ("payments
by a candidate for personal travel expenses, food, clothing, lodging, or personal
necessities for the candidate and the candidate's family") merely clarifies that
candidates need not report personal expenses that do not "support or oppose a
candidate or ballot issue."  *Id.*  Political committees, likewise, need not report
personal expenses because personal expenses are not made to "support or oppose a
candidate or ballot issue."  *Id.*  This definition reflects the common sense

understanding that "neither members of a political committee nor candidates who go on a family vacation are required to report those expenditures." (Doc. 12 at 7.)

Thus, Montana law is clear that, like noncandidates, a candidate who incurs travel expenses for a trip to Glendive to endorse himself or another candidate would be required to report that expense under § 13-1-101(18)(a). Because there is no discriminatory treatment between candidates and noncandidates, Montana's campaign disclosure laws do not restrict or disfavor speech from certain speakers.

Plaintiffs urge the Court to adopt a different reading. (Doc. 19 at 10–12.) They argue that § 13-1-101(18)(a) ("a purchase, payment, distribution, loan advance, promise, pledge, or gift of money or anything of value" that is "made by the candidate or political committee to support or oppose a ballot issue") already excludes from the definition of "expenditure" all expenses that are fundamentally personal in nature. (*Id.* at 11.) Because all personal expenses are already exempted, Plaintiffs argue that subsection (b)(ii), which excludes from the definition of expenditure all "payments by a candidate for personal travel expenses . . .", is rendered mere surplusage unless it applies to purchases of travel expenses that would otherwise qualify as expenditures. (*Id.*) Plaintiffs state that "if 13-1-101(18)(b)(ii) exempts *candidates'* purchases of personal travel expenses, food, clothing, etc., that would otherwise qualify as expenditures, then the State must apply this exemption to *noncandidates* . . . ." (*Id.* at 12.)

12

This argument is not persuasive.  First, the plain language of § 13-1-101(18)(a) does not discriminate between candidates and noncandidates.  For both, expenses that are not made "in support or opposition of a candidate or ballot issue" are not expenditures and need not be reported.  *Id.*  Personal travel expenses are not made in support of—or in opposition to—a candidate, and therefore neither candidates nor noncandidates are required to report those expenses.  *Id.*

Second, the duplication of the concept that personal travel expenses are not expenditures in subsection (a) and (b)(ii) does not render (b)(ii) superfluous because statutes often contain redundancy.  *See Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) ("sometimes the better overall reading of the statute contains some redundancy").  Finally, Plaintiffs assume any exemption in (b)(ii) that applies to candidates but not committees would somehow exempt the travel expenses they incurred, but they fail to explain how this alleged exemption would apply to them.  (Doc. 19 at 11–12.)  In other words, Plaintiffs fail to explain how any exemption of personal travel expenses under § 13-1-101(18)(b)(ii) would make their own travel expenses, which were made in support and opposition to candidates, exempt from reporting requirements.

Moreover, Plaintiffs' rebuttal argument undercuts their claim that the definition of "expenditure" is discriminatory to certain disfavored speakers.  Here, Plaintiffs admit that the definition of "expenditure" excludes expenses that are

13

fundamentally personal in nature, and that this definition applies to candidates and noncandidates alike.  (Doc. 19 at 11 (citing Mont. Code Ann. § 13-1-101(18)(a)).) Because candidates and noncandidates are treated alike, Plaintiffs fail to prove Montana's disclosure law disfavors certain speakers.

### B. The disclosure laws at issue withstand exacting scrutiny.

That Montana's campaign disclosures requirements apply equally to candidates and noncandidates does not, in and of itself, mean that Plaintiffs' First Amendment challenge fails.  *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976) ("[W]e have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment").  Any political disclosure requirement must still pass constitutional muster.  Generally, laws that burden political speech are subject to strict scrutiny and must be narrowly tailored to further a compelling state interest.  *Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1112 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2825 (2020) (hereinafter "*NAGR*").  However, regulations of *disclosure* of political speech are subject to "exacting scrutiny," which requires the government to show that the challenged laws are "substantially related to a sufficiently important governmental interest."  *Id.* (quoting *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010)).  Expenditure and contribution limits are subject to strict scrutiny because they have the effect of limiting the quantity and quality of expression.  *Id.*

(citing *Buckley*, 424 U.S. at 19).  Disclosure requirements, in contrast, may burden the ability to speak but do not impose a "ceiling on campaign-related activities" or "prevent anyone from speaking."  *Id.* (citing *Citizens United v. FEC*, 558 U.S. 310, 366 (2010)).  "Far from restricting speech, electioneering disclosure requirements reinforce democratic decision making by ensuring that voters have access to information about the speakers competing for their attention and attempting to win their support."  *Id.*  Accordingly, disclosure requirements are subject to a less rigorous standard than strict scrutiny, known as "exacting scrutiny."  *Id.* (citing *Doe v. Reed*, 561 U.S. 186, 196 (2010)).

Plaintiffs argue that the Court must apply strict scrutiny because Montana's regulation scheme presents a speaker-based restriction on speech, however, the Court has already concluded Montana's statute does not discriminate against noncandidates.  The State correctly identifies that the disclosure requirements here are subject only to exacting scrutiny.[2]  (Doc. 12 at 23 (citing *Yamada v. Snipes*, 786 F.3d 1182, 1194 (9th Cir. 2015).)  Despite their belief that strict scrutiny should apply, Plaintiffs admit that the State's disclosure laws further the important

---

[2] The State largely argues that the Court should dismiss Plaintiffs' claims for failure to allege a "particularized and accurate" burden.  (Doc. 12 at 25.)  The Court will not dismiss the claims on this basis.  The question is whether the disclosure requirements alone places a burden on First Amendment speech. The specificity of the alleged burden on First Amendment rights is relevant to what level of scrutiny the Court should apply.  *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 735 (2011) ("At the same time, we have subjected strictures on campaign-related speech that we have found less onerous to a lower level of scrutiny and upheld those restrictions").

interests of "providing the electorate with information, deterring actual corruption and avoiding any appearance thereof, and gathering the data necessary to enforce more substantive electioneering restrictions."  *Id.* (quoting *Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1031 (9th Cir. 2009)).  Indeed, the Ninth Circuit has upheld the disclosure of expenditures for electioneering communications upon finding that Montana has an interest in "increasing transparency, informing Montanans about who is behind the messages vying for their attention, and decreasing circumvention of campaign finance laws." *NAGR*, 933 F.2d at 1119.

The disclosure requirements at issue here withstand exacting scrutiny because the State has "a legitimate governmental interest in ensuring that voters are informed about the sources of spending on Montana elections," *Doctors for a Healthy Mont. v. Fox*, CV 20-46-M-DLC, 2020 U.S. Dist. LEXIS 144949 at *16–17 (D. Mont. Aug. 12, 2020), and the requirement for political committees and candidates to report expenditures in excess of $250 is substantially related to that interest.

## III.    Equal Protection

Based on their belief that Montana's disclosure requirement singles out noncandidates for less favorable treatment, Plaintiffs raise a Fourteenth Amendment Equal Protection claim.  (Doc. 5 at 15.)

An equal protection claim requires that a plaintiff establish "that a class that is similarly situated has been treated disparately." *Roy v. Barr*, 960 F.3d 1175, 1181 (9th Cir. 2020). A court must then "identify the government's classification of group" in the statute, and search for a control group, or "a comparative group composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the government's challenged policy." *Id.* The Equal Protection Clause does not prohibit classifications. *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017) (citing *Nordlinger v. Hahn*, 5050 U.S. 1, 10 (1992)). It simply keeps governmental decisionmakers from treating differently persons who are in all *relevant* respects alike. *Id.* (emphasis original). If the two groups are similarly situated, a court will then determine the appropriate level of scrutiny. *Roy*, 960 F.3d at 1181.

Montana disclosure law *does* classify between candidates and noncandidates. *See* Mont. Code Ann. § 13-1-101(31) (explaining a political committee is composed of two or more individuals, but a candidate and the candidate's treasurer do not constitute a political committee). Plaintiffs argue that candidates are the control group, and that candidates and noncandidates are treated differently. (Doc. 5 at 16.) However, as established in the above section, the law does not treat candidates and noncandidates differently. Both candidates and noncandidates are not required to report personal travel expenses because such

expenses are not "made in support or opposition of a candidate or ballot initiative"
and do not qualify as an expenditure.  Mont. Code Ann. § 13-1-101(18).
Therefore, Plaintiffs cannot show disparate class-based treatment under Montana's
disclosure laws, and their equal protection claim fails.

### IV.    Vagueness

Finally, Plaintiffs claim that Montana's definition of "de minimis act" is
unconstitutionally vague.  (Doc. 5 at 12.)  Plaintiffs assert that the definition of a
de minimis act "depends on the circumstances" and includes "expenses associated
with volunteer services or efforts, including the cost of gas, parking, and meals."
Plaintiffs claim this definition is problematic because the Commissioner does not
identify which circumstances are relevant.  (*Id.* at 14.)

However, the State points out that Plaintiffs cite only a partial definition.[3]
(Doc. 12 at 27.)  The full administrative rule provides five factors that the
Commissioner should consider when evaluating whether an act is "de minimis."
The State argues that the full definition is not unconstitutionally vague.  (*Id.* at 29.)

"A law is unconstitutionally vague if it fails to provide a reasonable
opportunity to know what conduct is prohibited or is so indefinite as to allow
arbitrary and discriminatory enforcement."  *Tucson Woman's Clinic v. Eden*, 379

---

[3]  For this reason, the Court will not address Plaintiffs' comparison to *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), except to say the case is not analogous because the definition of de minimis is considerably fuller than Plaintiffs suggest.

F.3d 531, 555 (9th Cir. 2004).  There are "two connected but discrete" concerns with a vagueness claim: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 576 U.S. 239, 253 (2012).  In the context of the First Amendment, "rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech."  *Id.*  However, "perfect clarity and precise guidance are not required [] because we can never expect mathematical certainty from our language."  *Yamada*, 786 F.3d at 1188 (internal quotation marks omitted).

In *Canyon Ferry*, the Ninth Circuit held that an older version of Montana's definition of a de minimis activity was unconstitutionally vague as applied to the plaintiff, but it was not facially invalid.  556 F.3d 1021 (9th Cir. 2009).  Since that time, the Montana Legislature and the Commissioner have added further clarity to the law.  *See* Mont. Code Ann. 13-1-101(31)(c).  The Montana legislature cured one of the issues noted in *Canyon Ferry* by implementing a threshold requirement—two or more individuals must spend at least $250 to constitute a political committee.  *Id.*  The Commissioner then added clarity to the

administrative rule by making transparent the factors it would consider in making any determination.[4]  Mont. Admin. R. 44.11.603(1)(a)–(e).

The new definition and examples of de minimis activities are not vague because the plain language of the regulations explains to the reader what is expected and how the government will enforce the regulations.  The first subsection of the administrative rule provides five factors that the Commissioner weighs in determining whether an act is de minimis, including "the amount of [fair market] value," whether the expense "is a single one-time event," and "the extent" to which the public would be harmed by the failure to disclose the expenditure.  *Id.* 44.11.603(1).  These factors, coupled with the $250 threshold, place sufficient bumpers around the Commissioner's exercise of any discretion—not to mention add a good deal more clarity than was present when the Ninth Circuit upheld an earlier version of the challenged law.

---

[4] The five factors include:
> (a) whether the act, contribution, or expenditure has an ascertainable fair market value, and if so the amount of that value;
> (b) in the case of an act that results in the provision of services, whether the act results in either a detriment to the provider of the services, such as an out-of-pocket expense or the preclusion of other activities;
> (c) whether the act, contribution, or expenditure at issue is a single, one-time event or occurrence or multiple events or occurrences;
> (d) the extent to which a particular campaign practices violation deprives the public of disclosure;
> (e) other factors and circumstances similarly showing limited value or minimal harm.

Mont. Admin. R. 44.11.603(1)(a)–(e).

Regardless of the definition itself, Plaintiffs claim that the expenses associated with their Glendive trip should be considered de minimis because they were "expenses associated with volunteer services or efforts . . ." (Doc. 19 at 4.) The State responds that Plaintiffs cannot volunteer for their own political committee because allowing the members of incidental committee to be counted as volunteers would create a loophole to Montana disclosure law that renders the law nonsensical.  (Doc. 23 at 6.)

The State's argument makes sense.  The incidental political committee that Plaintiffs claim they volunteered for is comprised of the Plaintiffs themselves. (*See* Doc. 23 at 6.)  It is nonsensical to interpret the regulations to allow Plaintiffs to volunteer for themselves.  Further, as the State points out, such an interpretation would create a massive loophole in Montana's disclosure laws.  The Court upholds the regulation and its application to Plaintiffs specifically. Accordingly,

IT IS ORDERED that Plaintiffs Motion (Doc. 4) is DENIED.

IT IS FURTHER ORDERED that the States' Motion (Doc. 11) is GRANTED.  The State is granted summary judgment on counts I, II, and III of Plaintiffs' Complaint.

IT IS FURTHER ORDERED that counts IV and VI of Plaintiffs' Complaint (Doc. 1) are DISMISSED without prejudice.

The Clerk of Court is directed to enter judgment, by separate order, in favor of Defendants and against Plaintiffs and close the case.

DATED this 4th day of January, 2021.

Dana L. Christensen, District Judge
United States District Court